# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| THE CITY OF PLANTATION POLICE OFFICERS' EMPLOYEES' RETIREMENT SYSTEM, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 2:14-cv-1380 |
| v. ) ) | **JUDGE JAMES L. GRAHAM** |
| **MICHAEL S. JEFFRIES, et al.**, ) ) | **MAGISTRATE JUDGE NORAH MCCANN KING** |
| Defendants, ) ) | |
| and ) ) | |
| **ABERCROMBIE & FITCH CO.**, ) ) | |
| Nominal Defendant. ) | |

**JOINDER OF NOMINAL DEFENDANT ABERCROMBIE & FITCH CO. TO REQUEST FOR RELIEF SOUGHT BY PLAINTIFF'S MOTION TO (1) RECONSIDER THE COURT'S OPINION AND ORDER DENYING MOTION FOR PRELIMINARY APPROVAL, (2) APPROVE CLARIFYING CHANGES TO THE SETTLEMENT RELEASE, AND (3) STAY THE COURT'S ORDER PENDING RULING ON THESE MOTIONS**

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................................1

I. IN RESPONSE TO THE COURT'S OPINION AND ORDER, THE PARTIES HAVE AGREED TO MODIFIED LANGUAGE CLARIFYING THE SCOPE OF RELEASE FOR ALL ABSENT ANF STOCKHOLDERS .................................................2

II. THE COURT SHOULD RECONSIDER THE OPINION AND ORDER DENYING PRELIMINARY APPROVAL AND GRANT PRELIMINARY APPROVAL ......................................................................................................................3

    A. All Claims That Could Arise From The Allegations In The Complaint Are Derivative Under Delaware Law. ........................................................................3

    B. The Settlement Is The Result Of An Appropriate And Arm's-Length Process. ..............................................................................................................6

    C. Therapeutic Settlements Of The Type Of Claims Asserted In The Derivative Action Are Conventional And Frequently Approved. ..........................8

CONCLUSION ................................................................................................................................9

Nominal defendant Abercrombie & Fitch Co. ("ANF") respectfully joins the request for relief sought by the motion of Plaintiff The City of Plantation Police Officers' Employees' Retirement System to (1) Reconsider the Court's September 26, 2014 Opinion and Order Denying Motion for Preliminary Approval (the "Opinion and Order"), (2) Approve Clarifying Changes to the Settlement Release (the "Motion"), and (3) Stay the Court's Order Pending Ruling on These Motions (Dkt No. 15).[1]

## ARGUMENT

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of a final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *accord Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Rule 54(b) provides that, in the absence of a final judgment as to all parties and claims, "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "'[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Louisville/Jefferson County Metro Gov't v. Hotels.com L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (second alteration in original) (quoting *Rodriguez*, 89 F. App'x at 959).

---

[1] *City of Plantation Police Officers' Emps.' Ret. Sys. v. Jeffries*, No. 2:14-cv-1380, Opinion and Order Denying Motion For Preliminary Approval of a Settlement in a Derivative Action (S.D. Ohio Sept. 26, 2014), Dkt No. 14 (hereinafter, "Opinion and Order"). ANF respectfully notes that the Court has entered an Order staying the Opinion and Order pending the Court's resolution of the Motion, and ANF, therefore, does not address that aspect of Plaintiff's Motion. (Dkt No. 16).

I.  **IN RESPONSE TO THE COURT'S OPINION AND ORDER, THE PARTIES HAVE AGREED TO MODIFIED LANGUAGE CLARIFYING THE SCOPE OF RELEASE FOR ALL ABSENT ANF STOCKHOLDERS.**

Recognizing and respecting the concerns that the Court expressed in the Opinion and Order as to the scope of the release provided in the Settlement Agreement, the parties have clarified the release language. As set forth in the Motion, the revised language provides (revisions emphasized):

> "Released Plaintiff's Claims" means all **derivative** claims and **derivative** causes of action of any kind, nature, or description, whether known claims or Unknown Claims (as defined below), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule, (i) that the System asserted in the Verified Stockholder Derivative Complaint or that are related to the potential claims set forth in the Section 220 Demand; or (ii) that any other ANF Stockholder could assert ~~in a complaint~~ **derivatively** that are based upon or arise out of or relate to, in any way, any of the actions, transactions, occurrences, statements, allegations, or facts that were set forth in the Section 220 Demand or contained in the documents produced in response to the Section 220 Demand, except for claims relating to the enforcement of the Settlement. For the avoidance of doubt, the Released Plaintiff's Claims include **derivative** breach of fiduciary duty claims, discussed in the Section 220 Demand or raised in the Verified Stockholder Derivative Complaint, related to executive compensation awards and alleged governance and oversight failures, but do not include **(i)** claims based on future conduct of the ANF Releasees, including any conduct of the ANF Releasees after ~~the date of execution of this Stipulation~~ **August 28, 2014**, **or (ii) any direct claims belonging to ANF Stockholders**.

The modification makes plain to absent ANF stockholders that the only claims that would be released in the Settlement are derivative and that no direct claims would be released if the Settlement were approved. This modification alone provides an appropriate basis for the Court to reconsider the Motion for Preliminary Approval. *See Louisville/Jefferson County Metro Gov't*, 590 F.3d at 389.

The parties will promptly submit for Court approval an amended Notice of Proposed Settlement of Derivative Action, Settlement Fairness Hearing, And Right to Appear reflecting the modified provision of the Settlement. If the Court grants preliminary approval, the

revised Notice would be mailed to stockholders of record as of August 29, 2014, each of whom will have the opportunity to appear before the Court at a final approval hearing and voice their concerns (if any) with the Settlement.

### II. THE COURT SHOULD RECONSIDER THE OPINION AND ORDER DENYING PRELIMINARY APPROVAL AND GRANT PRELIMINARY APPROVAL.

The clarifying language agreed between the parties makes it explicitly clear that the only claims that would be released in the Settlement are derivative.  As a result, the concerns raised in the Opinion and Order that related to the release of direct claims have been addressed.  ANF respectfully submits that preliminary approval of the Settlement should be granted, thereby providing absent ANF stockholders notice and an opportunity to be heard.

#### A. All Claims That Could Arise From The Allegations In The Complaint Are Derivative Under Delaware Law.

In the Opinion and Order, the Court explained that "[t]he actionable conduct identified in the complaint best fits a breach of fiduciary claim – a claim that the release clearly waives."  Opinion and Order at 8.  The Court further explained that such a release "would not amount to much of a sacrifice," but for the fact that "Delaware, the state of incorporation of Abercrombie, recognizes a direct cause of action by shareholders against officers and directors for breach of fiduciary duty."  *Id.*  While the Court is correct that controlling Delaware law provides that directors and officers owe fiduciary duties directly to stockholders, not every alleged injury creates a direct cause of action by stockholders.

The allegations in Plaintiff's complaint can be grouped into the following two categories of purported breaches of fiduciary duty:  (1) excessive executive compensation and expenses; and (2) mismanagement by failure of oversight.  Compl. ¶ 135(c)-(d).  Under Delaware law, these claims and the allegations supporting them are quintessentially derivative in nature and not susceptible to direct claims for breach of fiduciary duty.

3

The Delaware Supreme Court has explained that the distinction between direct and derivative claims should be determined by considering two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or its stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Following the "analytic framework" set forth by *Tooley*, the Delaware Supreme Court has stated:

> If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative. Conversely, if the stockholder suffered harm ***independent of any injury to the corporation*** that would entitle him to an individualized recovery, the cause of action is direct.

*Feldman v. Cutaia*, 951 A.2d 727, 732 (Del. 2008) (emphasis added; footnote omitted); *see also id.* at 733 ("Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. . . . In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large."). Based upon this standard, the claims asserted and the allegations contained in the Complaint could give rise only to derivative claims.

Challenges to executive compensation and expenses are solely derivative claims under Delaware law. *See Mann-Palle Found., Inc. v. Econometric Research, Inc.*, 644 F. Supp. 92, 98 (D.D.C. 1986) (applying Delaware law) (explaining that an improper or excessive compensation claim "would have to be brought derivatively, rather than individually, as the harm falls equally on all shareholders"); *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) (action challenging stock options, bonuses and excessive fee and expense payments was "entirely derivative in nature"); *MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, at *15 (Del. Ch. May 5, 2010) (claims challenging improper executive bonus payments

4

and compensation increases were derivative); *Feldman v. Cutaia*, 956 A.2d 644, 659-60 (Del. Ch. 2007) (breach of fiduciary duty claim challenging stock options was "a derivative claim"), *aff'd*, 951 A.2d 727 (Del. 2008); *Bershad v. Hartz*, No. 6960, 1987 WL 6092, at *3-4 (Del. Ch. Jan. 29, 1987) (action challenging "golden parachute" employment agreements was derivative); *Dart v. Kohlberg, Kravis, Roberts & Co.*, No. 7366, 1985 WL 21145, at *6 (Del. Ch. May 9, 1985) (action challenging terms of leveraged buyout was "derivative in nature"); *Colonial Sec. Corp. v. Allen*, No. 6778, 1983 WL 19788, at *1, *3-4 (Del. Ch. Apr. 18, 1983) (action challenging "golden parachute" employment agreements was derivative); *Elster v. Am. Airlines*, 100 A.2d 219, 222-23 (Del. Ch. 1953) (action challenging stock options was derivative); *see also Ind. Elec. Workers Pension Trust Fund, IBEW v. Dunn*, 352 F. App'x 157, 159, 162 (9th Cir. 2009) (applying Delaware law) (action challenging settlement agreement payment to former CEO after her termination was derivative).

Likewise, claims of mismanagement on the part of directors, including failure-of-oversight claims like those asserted here, are classic derivative claims under Delaware law. Indeed, the Delaware Court of Chancery has referred to a mismanagement claim like that asserted by Plaintiff here as "a paradigmatic derivative claim." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005); *see also id.* ("[C]laims for gross negligence and failure to provide competent and active management are clearly derivative."); *cf. In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *3-5 (Del. Ch. Oct. 12, 2011) (derivative action pleading excessive compensation structure, corporate waste, and failure of oversight); *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 966-72 (Del. Ch. 1996) (derivative action pleading failure of oversight).

The claims asserted here and any claims based on the allegations contained in the Complaint are purely derivative under Delaware law. Accordingly, the Motion should be granted. *See, e.g.*, *Louisville/Jefferson County Metro Gov't v. Hotels.com, LP*, No. 3:06-CV-480-R, 2008 WL 4500050, at *2 (W.D. Ky. Sept. 30, 2008) (granting motion for reconsideration), *aff'd*, 590 F.3d 381 (6th Cir. 2009).

B.   **The Settlement Is The Result Of An Appropriate And Arm's-Length Process.**

In the Opinion and Order, the Court expressed the concern that "settlements in class and derivative actions can be vehicles for collusion." Opinion and Order at 10. Although "not branding this proposed settlement as collusive," the Court nevertheless expressed "concerns about the fairness of the proposed settlement." *Id.*

Recognition of the claims asserted in the Complaint (which would be released in the Settlement) as solely derivative and, therefore, belonging to ANF (and not to stockholders directly) should address those concerns. The Court can draw additional assurance from the fact that, after arms'-length negotiations between the Plaintiff and ANF, the Settlement was determined to be in the best interests of ANF and its stockholders by the ANF Board, which is comprised of a majority of disinterested and independent directors.[2] Indeed, seven of the twelve

---

[2]   *See* Del. Code Ann. tit. 8, § 141(a) (West Supp. 2014) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors . . . ."); *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 232 n.7 (Del. 2008) ("[T]he board's managerial authority under [Del. Code Ann. tit. 8, §] 141(a) is a cardinal precept of the [Delaware General Corporation Law.]"). As a result, the ANF Board is empowered to decide whether to pursue both alleged and potential derivative claims and whether such claims should be settled. *See South v. Baker*, 62 A.3d 1, 13 (Del. Ch. 2012) (Del. Code Ann. tit. 8, § 141(a) "vests statutory authority in the board of directors to determine what action the corporation will take with its litigation assets" (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981))); *see also* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* §
*(cont'd)*

ANF Board members joined the Board *after* the occurrence of the wrongdoing alleged in the Complaint. *See* Compl. ¶¶ 13, 65, 81, 89 (alleging latest occurrences of wrongdoing, which occurred prior to 2014).[3]

Additionally, the timing of the negotiated Settlement of derivative claims and the filing of the Complaint should not undermine the Court's view of the Settlement's fairness. The Delaware Supreme Court has repeatedly instructed that stockholder-plaintiffs should utilize 8 *Del. C.* § 220, which provides a statutory right to examine certain corporate documents, before filing a derivative action. *See, e.g.*, *King v. VeriFone Holdings, Inc.,* 12 A.3d 1140, 1145 (Del. 2011) ("Delaware courts have strongly encouraged stockholder-plaintiffs to utilize Section 220 before filing a derivative action . . ."). Plaintiff here followed this procedure and, approximately nine months ago, continued its ongoing investigation by seeking under the statutory authorization of 8 *Del. C.* § 220 much of the discovery that would ordinarily be available only after a complaint was filed and had survived initial motion practice. Access to this discovery material put Plaintiff in a position to analyze the strengths and weaknesses of its claims before the filing of a complaint, and reach a negotiated resolution. The Plaintiff conducted further confirmatory discovery prior to executing the Settlement.

---

*(cont'd from previous page)*
9.02[b][3][i] (2014) ("[T]he board of directors possesse[s] the preeminent authority to determine the propriety and direction of litigation on the corporation's behalf.").

[3] In January 2014, the ANF Board separated the roles of Chief Executive Officer and Chairman of the Board and added a non-executive chairman, as well as two additional independent directors, to the ANF Board. *See* Abercrombie & Fitch Co., Current Report (Form 8-K) Item 5.02 (Jan. 28, 2014). These changes resulted in the addition of three new directors, increasing the size of the ANF Board from nine to twelve directors. *Id.* Four entirely new directors were elected to the ANF Board in June 2014. *See* Abercrombie & Fitch Co., Current Report (Form 8-K) Item 5.07 (June 19, 2014).

Procedurally, thereafter the Plaintiff followed the precedent of *Robinson v. Ford Motor Co.*, No. 1:04 CV 00844, 2005 WL 5253339, at *1 (S.D. Ohio June 15, 2005) (explaining that "immediately following the filing of Plaintiffs' Complaint, the Parties filed a Joint Motion for Preliminary Approval of Settlement Agreement and Provisional Class Certification"). In *Robinson*, Judge Spiegel, approving a class action settlement, "praise[d] the Parties for their efforts in bringing [the] litigation to quick resolution." *Id.* He explained that, "[t]o delay th[e] matter further[] [through litigation] would not substantially benefit" absent stakeholders. *Id.* at *5. The same prompt and efficient resolution lauded in *Robinson* is contemplated here. Accordingly, following the filing of Plaintiff's Complaint, Plaintiff filed, and ANF did not oppose, Plaintiff's Motion for Preliminary Approval of Derivative Litigation Settlement. Pl's Mot. for Prelim. Approval of Settlement (Aug. 29, 2014) (Dkt No. 2).

      **C.**    **Therapeutic Settlements Of The Type Of Claims Asserted In The Derivative Action Are Conventional And Frequently Approved.**

As set forth in the Motion, settlements of derivative actions alleging similar claims and adopting therapeutic changes are conventional. In fact, corporate governance and compliance reforms similar to those contemplated here have been approved as valuable consideration in exchange for a settlement of a derivative action. In addition to the authority cited by Plaintiff in its memorandum in support of the Motion, see *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (rejecting argument that settlement, which called for changes in corporate governance, was insufficient, and finding that "the terms of the settlement offer substantial benefit to [the corporation] and its shareholders"); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 487-92 (D.N.J. 2012) (rejecting objector's criticism of pharmaceutical company's corporate governance reforms, and concluding that such reforms "confer[] a substantial benefit on the corporation"); *Resnik v. Abraham*, No. 10-390-RK,

8

Order and Final Judgment at 1-2 (D. Del. Feb. 8, 2011), Dkt No. 73 (approving derivative settlement based on changes in compensation practices and corporate governance reforms (*see* Revised Stipulation of Settlement at 7-10, *Resnik v. Abraham*, No. 10-390-RK (D. Del. filed Dec. 28, 2010), Dkt No. 57 (describing changes in compensation practices and corporate governance approved by Order and Final Judgment, Dkt No. 73)).

ANF believes the corporate governance and compliance reforms included in the Settlement here will confer a substantial benefit upon ANF and its stockholders.

## CONCLUSION

For the reasons explained herein, ANF respectfully requests that the Court (1) reconsider the Opinion and Order, (2) approve clarifying changes to the Settlement release, and (3) grant preliminary approval of the proposed Settlement.

ANF's counsel are available at the Court's convenience to address any further questions or concerns.

Respectfully submitted,

*/s/ John J. Kulewicz*
John J. Kulewicz     (0008376)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay Street
P.O. Box 1008
Columbus, Ohio  43216-1008
Telephone No.:  (614) 464-5634
Facsimile:  (614) 719-4812
E-Mail:     jjkulewicz@vorys.com

Trial Counsel for Nominal Defendant Abercrombie & Fitch Co.

Edward P. Welch
Cliff C. Gardner
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Telephone No.:  (302) 651-3000
Facsimile:  (302) 651-3001
E-Mail:     edward.welch@skadden.com
            cgardner@skadden.com

Jay B. Kasner
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Telephone No.:  (212) 735-3000
Facsimile:  (212) 735-2000
E-Mail:     jay.kasner@skadden.com

Counsel for Nominal Defendant Abercrombie & Fitch Co.

**CERTIFICATE OF SERVICE**

      I served a copy of this memorandum upon the following counsel for Plaintiff through operation of the CM/ECF system on September 30, 2014:

Mark Lebovitch
David Wales
Adam D. Hollander
BERNSTEIN LITOWITZ BERGER &
 GROSSMANN, LLP
1285 Avenue of the Americas
New York, New York  10019
markl@blbglaw.com
adam.hollander@blbglaw.com

Richard S. Wayne
Robert R. Sparks
STRAUSS TROY CO., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio  45202-4018
rswayne@strausstroy.com
rrsparks@strausstroy.com

            */s/ John J. Kulewicz*
            John J. Kulewicz    (0008376)

11